FRIZZELL *v.* LOWE.

Opinion delivered May 30, 1927.

1. TAXATION—VALIDITY OF TAX FORFEITURE.—The State Land Commissioner cannot convey good title to land based on a tax forfeiture where the taxes were assessed in a county adjoining that in which the land was situated.

2. INJUNCTION—CUTTING TIMBER—TITLE OF PLAINTIFF.—In a suit to enjoin a removal of timber which involved the ownership of land, the plaintiff must recover on the strength of her own title, and not on the weakness of the title of her adversaries.

3. PUBLIC LANDS—TITLE TO UNSURVEYED ISLAND.—Title to an unsurveyed island *held* not to pass to the State under a patent of April

16, 1855, though it was included within the boundaries of such patent, where the patent conveyed "according to the official plats of surveys."

4.    PUBLIC LANDS—RIGHT TO QUESTION PATENTS.—The patent to public land issued by the General Land Office, not void on its face, cannot be questioned directly or collaterally by persons who do not show themselves to be in privity with a common or paramount source of title.

5.    WATER AND WATERCOURSES—ISLAND IN NON-NAVIGABLE STREAM.— The ownership of land opposite an island in Little Missouri River, which is a non-navigable stream, carries with it riparian rights to the thread of the stream, including an island.

Appeal from Ouachita Chancery Court, Second Division; *George M. LeCroy,* Chancellor; affirmed.

*McMillan & McMillan,* for appellant.

*George W. Hays* and *Oscar Winn,* for appellee.

*Harry E. Meek, amicus curiae.*

McHANEY, J.  This suit involves the ownership of 36.32 acres of land known as "Hurt's Island" in the Little Missouri River, in Ouachita County, Arkansas. The Little Missouri River at this point is the boundary line between Ouachita and Clark counties.  At the point where the river strikes the island it is divided into two streams, the one to the north side of the island being the larger and main body of the river, in which is the middle or thread of the stream.  This island has distinct shore lines with well defined banks emerging out of the stream to the level of or even higher than the upland on either side of the stream.  It is covered with valuable timber, and it may be said that this island has been there in the same condition as at the present time for many years, such a length of time that the memory of men still living runneth not to the contrary.

On April 16, 1855, the Federal Government executed and delivered to the State of Arkansas a swamp land patent, conveying "the whole of fractional section 9" and other lands "containing in the aggregate 68,375.77 acres, according to the official plats of survey of said land returned to the General Land Office by the Surveyor General."  Fractional section 9 is located in township 11

south, range 18 west. Hurt's Island is wholly within the exterior boundaries. of fractional section 9, lying in the north one-half of said section, near the center thereof, a part being in the northeast and a part in the northwest quarter of said section. The survey of fractional section 9 and other lands contained in this swamp land patent was made in 1837-38, and it appears that Hurt's Island was not surveyed. The plat shows the meander lines of both banks and both channels of Little Missouri River surrounding this island, and the quarter section lines on the plat of the survey run only to the brink of the river both north and south of the island, but not across the river, nor across said island. It was designated on the plat by the engineers as "Hurt's Id." In 1917 the Government caused an actual survey to be made of Hurt's Island, and on July 13, 1922, on the assumption that the swamp land patent had not conveyed said island to the State of Arkansas, the Department of the Interior patented said island to the appellee, Martha H. Lowe. The State had never attempted to convey this island until the year 1920, when a swamp land deed was issued to E. L. Huddleston, but the State Land Commissioner thereafter determined that the state had no title to the island, canceled the deed to Huddleston and caused the purchase price to be refunded to him. This island was placed upon the taxbooks of Clark County for the year 1920; the taxes not being paid, same was forfeited to the State, and appellants claim title to the island by virtue of deed from the State Land Commissioner, based on this forfeiture, dated Sept. 18, 1925.

Appellee brought this suit October 15, 1925, against appellants, setting up her title from the Government and the payment of taxes on this island since the date of the patent, to enjoin the appellants from cutting and removing the timber from the island, on which issue was joined, and the court, after hearing the testimony, decreed the title to the island in appellee, enjoined appellants from cutting and removing the timber therefrom, and can-

celed the tax deed under which appellants claimed. From this decree this appeal is prosecuted..

Appellant has correctly stated that the only question in this case is, "Did the swamp land patent executed by the U. S. Government on April 16, 1855, convey to the State of Arkansas the tract of land involved in this suit?" If it did, then the Government had nothing to convey at the time it issued the subsequent patent to appellee. If it did not, then the title remained in the Government, which passed to appellee by the patent of July 13, 1922.

It may be stated at the outset that the tax forfeiture above mentioned is void, and that appellants acquired no title by virtue of their deed from the State, either by limitation or otherwise, based thereon. The land, being in Ouachita County, could not be assessed for taxes in Clark County, and it may be further said that the appellee, having brought this action for affirmative relief, must recover, if at all, upon the strength of her own title, rather than the weakness of that of her adversaries.

We are of the opinion that the above question must be answered in the negative, that is, that the title to Hurt's Island did not pass to the State under the swamp land patent of 1855. We think it clear that the language of the patent, "the whole of fractional section 9, * * * according to the official plats of survey of said lands returned to the General Land Office by the Surveyor General," conveyed only such land in fractional section 9 as had been surveyed. In the case of *Champman & Dewey Lbr. Co. v. St. Francis Levee Dist.*, 100 Ark. 94, 139 S. W. 625, the U. S. Government patented to the State of Arkansas a tract described in the patent as follows: "Township 12 north of range 7 east. The whole of the township (except section 16), containing 13,615 acres and 67-100 of an acre, * * * according to the official plats of survey of said lands returned to the General Land Office by the Surveyor General." There was a large area of unsurveyed land within the exterior limits of this township, that was either low, marshy or covered with water, and was meandered on the official plat or map, and was designated

thereon as "sunk lands." And in the course of its opinion this court said:

"The outside boundaries of the entire township are fixed, and the lands marked 'sunk lands' upon the plat are within such fixed boundaries, and shown to be so, and are clearly designated by reason of the meander line dividing the unsectionized sunk lands from the surveyed and platted lands."

It will be seen from the language used here that the appellants in this case are following the theories announced by the court in that case. But this decision of our court was reversed by the Supreme Court of the United States, and will be found in 232 U. S. 186, 34 S. Ct. 297, 58 L. ed. 564, and in commenting upon this same question the Supreme Court of the United States used this language:

"Of course, the words in the patent, 'the whole of the township (except section 16)', are comprehensive, but they are only one element in the description, and must be read in the light of the others. The explanatory words, 'according to the official plats of survey of said lands, returned to the General Land Office by the Surveyor General', constitute another element, and a very important one, for it is a familiar rule that, where lands are patented according to such a plat, the notes, lines, landmarks, and other particulars appearing thereon become as much a part of the patent, and are as much to be considered in determining what it is intended to include, as if they were set forth in the patent."

It appears to us that this construction of the Supreme Court of the United States of the conveyance in that case is controlling here. Of course, a very much larger body of land was under consideration, but it seems to us that the principles there announced are controlling here.

Again, in the case of *Little* v. *Williams*, 88 Ark. 37, 113 S. W. 340, the court, in the opinion on rehearing, defined the word "township," as used in a stipulation of facts, as follows:

"Therefore, giving the word 'township,' used in the stipulation of facts, the meaning which we must attribute to the parties who employed the term, it has reference to the township surveyed and platted by the Government surveyors, and means the townships according to the surveys and plats. A conveyance of the township 'according to plat of surveys' does not include lands which do not appear on the plat of the surveys."

Again, it is perfectly manifest that Hurt's Island had never been surveyed, from the fact that the Department required a survey thereof in 1917. If it had already been surveyed, we can see no necessity for having a resurvey. And prior to the year 1920, the State apparently had never claimed any title to this island by virtue of its swamp land grant, as in that year it sold the island to one Huddleston, and thereafter canceled the sale and refunded the money, on the opinion of the State Land Commissioner that the State had no title. This was public land, and appellee's patent is valid on its face.

In 22 R. C. L., page 309, it is said:

"A patent to public land issued by the General Land Office, and not void on its face, cannot be questioned, either directly or collaterally, by persons who do not show themselves to be in privity with a common or paramount source of title."

It is true that the Little Missouri River is a non-navigable stream, and that the ownership of the land opposite the island carries with it the riparian rights to the thread of the stream, which would no doubt include any ordinary island to be expected in a stream of this size, but appellants are not the owners of the land on either side of the stream opposite Hurt's Island, and are in no position to raise the question of riparian rights or to invoke the law applicable to such questions.

It follows from what we have said that the decree is right, and must be affirmed. It is so ordered.